IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VIKING ENERGY CORPORATION, et al.,

    Plaintiffs,

v.           CIVIL ACTION NO. 2:24-cv-00126

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

    Defendant.

MEMORANDUM OPINION AND ORDER

  Pending before the court is a Partial Motion to Dismiss Count II of Plaintiffs' Amended Complaint filed by Defendant, Certain Underwriters at Lloyd's London, consisting of Lloyd's Syndicate Numbers 4020, 1458 and 1084 ("Defendant"). [ECF No. 19]. Plaintiffs, Viking Energy Corporation ("Viking") and Viking Transportation & Disposal Company, LLC ("T&D") (collectively, "Plaintiffs"), responded in opposition, [ECF No. 21], and Defendant replied, [ECF No. 22]. For the following reasons, Defendant's Partial Motion to Dismiss, [ECF No. 19], is **DENIED**.

I. Background

  A. *The Policy*

  Plaintiffs in this matter are two related companies engaged in the oil and gas industry. [ECF No. 14, ¶ 1]. On or about March 19, 2015, Defendant issued Plaintiff T&D an insurance policy (the "Policy") to cover "pollution conditions discovered, or

1

claims first made and reported, during the policy period" of March 19, 2015, through November 1, 2015. *Id.* ¶¶ 6–7; *see also* [ECF No. 14-1, at 1, 21]. The Policy applies to two covered sites—one at Derricks Creek, West Virginia, and the other at Tuppers Creek, West Virginia (the "Sites")—and provides a liability limit of $1,000,000.00 per claim, each subject to a deductible of $10,000.00. [ECF No. 14, ¶ 6]; *see* [ECF No. 14-1, at 1]. Premier Claims Management, LLC, ("PCL") who is not a party to this suit, is listed in the Policy as the agent to receive notice of claims for Defendant under the Policy. [ECF No. 14, ¶¶ 3, 6]; *see* [ECF No. 14-1, at 1].

The Policy contains coverage provisions for "Onsite Cleanup" and "Third Party Claims." [ECF No. 14, ¶ 7]. The "Onsite Cleanup" coverage provides that Defendant will pay "expenses incurred to perform a cleanup" resulting from "pollution conditions at, on, or under" the Sites. *Id.* The "Third Party Claims" coverage provides in relevant part that Defendant would pay, "on behalf of the Insured those sums that the Insured [became] legally obligated to pay as damages from claims[1] for bodily injury or property damage that result from pollution conditions at, on, under or migrating from" the Sites. *Id.* Additionally, the Policy contains a duty to defend provision, which provides that Defendant has the "right and duty to defend the Insured against any suit" seeking the damages described in the "Onsite Cleanup" and "Third Party Claims" provisions. *Id.* According to Plaintiffs, the Policy "was intended to afford

---

[1] The Policy defines the term "Claim" in relevant part as "a written request or demand received by an Insured for money or services, including the institution of a suit or arbitration proceedings against an Insured seeking damages." [ECF 14-1, at 29].

2

benefits and protections to [Plaintiffs] for property damage to property consisting of the [Sites], and any surrounding or adjoining real property." *Id.* ¶ 9.

  B. *The Claim*

On or about June 16, 2015, two property owners filed a civil suit (the "Davis/Shaffer Action") against Viking and a related company, M&S Properties, LLC, alleging that their property had been damaged by "a drilling waste disposal well operation." *Id.* ¶¶ 10–11. The property owners sought compensatory damages, including cleanup costs and damages for diminished property value, as well as injunctive relief to prohibit future placement of waste onto their properties. *Id.* ¶¶ 11–12; *see* [ECF No. 14-2]. According to Plaintiffs, the drilling waste disposal well operation described in that case included the Derricks Creek Site operated by T&D, which was covered under the terms of the Policy. *Id.* ¶ 11.

Because the damage asserted in the Davis/Shaffer Action constituted "property damage" as defined in the Policy resulting from Plaintiffs' operations at one of the covered Sites, Plaintiffs notified PCL of the third-party claim on July 14, 2015, "in full compliance with the notice requirements of the Policy." *Id.* ¶ 13. On July 17, 2015, PCL's General Counsel emailed Plaintiffs, identifying them both as "Insureds" under the Policy and providing the claim number assigned to the Davis/Shaffer claim. *Id.* ¶ 14 (citing [ECF No. 14-3, at 1]). The General Counsel then advised Plaintiffs that PCL was investigating the claim, identified Matthew Arigo as the individual who would be handling the claim, and requested that Viking forward to PCL copies of, *inter alia*, all documents, photographs, and other items showing the extent of the

3

property damage. *Id.* On August 3, 2015, Mr. Arigo confirmed in an email to a Viking officer that an investigation was being conducted. *Id.* ¶ 15. He also inquired as to the status of documents that PCL had requested and instructed Viking to "take whatever action is necessary to protect[ ] the best interests of [Viking] in [the] litigation." *Id.* ¶ 15 (quoting [ECF No. 14-4, at 1]).

By August 17, 2015, Ken Webb, an attorney at Bowles Rice LLP who had been retained by Viking to protect its interests as instructed, had communicated with PCL to provide notice of an upcoming mediation in the Davis/Shaffer Action that would occur on either September 2, or September 10, 2015. *Id.* ¶ 16 (citing [ECF No. 14-5]). On September 3, 2015, Mr. Webb informed Mr. Arigo that he would work on gathering the documentation PCL had requested from Viking and confirmed that the mediation for the Davis/Shaffer Action would be held on September 10, 2015. *Id.* (citing [ECF No. 14-6]). According to Plaintiffs, PCL did not object on its own behalf or on behalf of Defendant to the mediation or the chosen date, but instead, PCL, on behalf of Defendant, "fully acquiesced in the matter proceeding to mediation." *Id.* ¶ 17. Despite this acquiescence, however, Plaintiffs claim that neither PCL nor Defendant took any action to prepare for mediation, facilitate a settlement negotiation, or engage counsel to provide a defense. *Id.* ¶ 18.

Instead, on September 8, 2015, Mr. Webb received a letter from Kurt M. Zitzer, an attorney at Meagher & Geer, PLLP—the law office serving as Defendant's coverage counsel—informing him that although the Davis/Shaffer Action had been tendered to Defendant "for defense and indemnity," Defendant would be unable to

4

arrange for anyone to attend the mediation on Viking's behalf due to the "short notice" provided by Viking. *Id.* ¶¶ 19–22 (quoting [ECF No. 14-7, at 1–2]). Mr. Zitzer then assured Mr. Webb that despite not being consulted about the mediation, Defendant would not object to the mediation occurring, as it was Defendant's understanding that Viking was not requesting Defendant offer any indemnity on its behalf at the mediation. *Id.* ¶ 22 (citing [ECF No. 14-7, at 2]). However, according to Plaintiffs, "Mr. Webb never intimated to anyone in any manner that [Plaintiffs] were declining indemnity" or "suggest[ed] that they were declining any other benefits or protections of the Policy." *Id.* ¶ 24. Rather, Plaintiffs contend that "[t]he false statement contained in Mr. Zitzer's September 8, 2015[,] letter was designed as an artifice to enable [Defendant] to strategically avoid affording [Plaintiffs] any benefits of the Policy." *Id.*

Despite Mr. Zitzer's request in the September 8, 2015, letter that he be immediately advised if he "failed to include or mischaracterized any facts" therein, [ECF No. 14-7, at 2], it does not appear that Plaintiffs or their counsel reached out to correct Mr. Zitzer's allegedly incorrect understanding. Rather, the next contact that Mr. Webb had with Mr. Zitzer's office was a two-sentence email to Mr. Zitzer's administrative assistant on September 10, 2015, in which Mr. Webb stated, "Viking settled the Davis/Shafer [sic] matter at mediation today. Let me know if you need anything further." [ECF No. 14-8]. According to Plaintiffs, neither Defendant nor its agents ever requested any additional details about the settlement. [ECF No. 14, ¶ 26].

5

Over a year later, on September 23, 2016, Viking and the Davis/Shaffer plaintiffs went to arbitration regarding disagreements over the terms of the September 2015 settlement. *Id.* ¶ 32. Mr. Webb continued to represent Viking throughout the arbitration process, but according to Plaintiffs, Defendant never engaged counsel to represent Viking or "otherwise afford any benefits or protections" under the Policy. *Id.* ¶ 33. However, Defendant also never explicitly declined coverage or "provided its insureds with any statement of position or explanation of any kind about its failure to do so." *Id.* ¶ 34.

Nearly six years later, on July 15, 2022, and August 16, 2022, respectively, attorney Steven L. Thompson, who had been engaged by Viking "to pursue coverage issues relating to the Policy" contacted Mr. Zitzer regarding outstanding benefits under the Policy. *Id.* ¶ 35. Mr. Zitzer responded on October 4, 2022, arguing that "Mr. Webb informed Mr. Arigo . . . that Viking was not asking [Defendant] to participate in the mediation, contribute towards any settlement, and/or to defend the matter on a going forward basis." [ECF No. 14-12, at 1 (emphasis in original)]. He points out that the settlement had been made without Defendant's knowledge or written consent and that the September 10, 2015, settlement notice email was the last communication Defendant had received related to the matter. *Id.* at 2. Ultimately, Mr. Zitzer stated that Viking had breached the terms and conditions of the Policy, "resulting in a loss of any available insurance coverage related to the original dispute." *Id.* at 3.

    *C.*    *Procedural History*

On March 15, 2024, Plaintiffs filed their Original Complaint in this court under diversity jurisdiction, asserting two state-law causes of action against Defendant. *See* [ECF No. 1]. Defendant waived service of process, [ECF No. 4], and filed a Partial Motion to Dismiss Count II, [ECF No. 11]. Thereafter, Plaintiffs filed their First Amended Complaint. [ECF No. 14].

In their Amended Complaint, Plaintiffs again assert two state-law causes of action against Defendant: (1) Breach of Insurance Contract, and (2) Violation of the West Virginia Unfair Claim Settlement Practices Act ("UCSPA"), W. Va. Code § 33-11-4(9). *See* [ECF No. 14, ¶¶ 44–51]. As to Count I, Plaintiffs claim that Defendant's conduct regarding the Davis/Shaffer matter "constitutes a breach of the insurance contract, in that Lloyds has flatly refused to provide the Insureds with any of the benefits and/or protections of the Policy." *Id.* ¶ 45. Specifically, Plaintiffs argue that Mr. Zitzer's statements in the October 4, 2022, letter regarding Plaintiffs' alleged breach "were entirely pretextual, and were deceptively employed by Mr. Zitzer on [Defendant's] behalf as a strategic method of evading the fact that [Defendant] failed to proffer or provide any of the benefits of the Policy" and that the letter itself "constitutes a clear and flagrant breach" of the Policy. *Id.* ¶ 38. As to Count II, Plaintiffs argue that Defendant's continued conduct—"its dilatory and non-responsive reaction" to Plaintiffs' claim; Mr. Zitzer's "misleading, deceptive and inaccurate misstatements;" and its "unjustified, obstinate failure to honor its obligations to defend and indemnify Plaintiffs"—"constitutes a series of acts and

7

courses of conduct performed with sufficient frequency as to indicate a general business practice that violates the provisions of the [UCSPA]." *Id.* ¶ 48.

Defendant then filed the instant Motion to Dismiss Count II of Plaintiffs' First Amended Complaint, claiming that (1) Plaintiffs have failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (2) the claim is time-barred. [ECF No. 19]. Plaintiffs timely responded in opposition, [ECF No. 21], and Defendant replied, [ECF No. 22]. The matter is ripe for review.

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The Federal Rules of Civil Procedure require that a complaint make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-cv-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Thus, "a

complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### III.  Discussion

Defendant argues that Plaintiffs have failed to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure and that Count II is time barred under the controlling statute of limitations. [ECF No. 20, at 9, 13]. Because jurisdiction in this case rests on diversity of citizenship, I will apply West Virginia substantive law and federal procedural law in addressing each of Defendant's arguments. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938); *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108–09 (1945).

### A.  *Failure to State a Claim*

The UCSPA—a subsection of the West Virginia Unfair Trade Practices Act ("UTPA")—was promulgated "to regulate trade practices" in the insurance industry by prohibiting insurance companies from using "unfair or deceptive acts or practices." W. Va. Code § 33-11-1. Section 33-11-4(9) of the UCSPA outlines fifteen distinct acts deemed to be "unfair claim settlement practices" within the insurance industry, including, *inter alia*, "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue," "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," and "refusing to pay claims without conducting a reasonable investigation based upon all available information." *Id.* §§ 33-11-4(9)(a), (b), (d). To establish a violation of the UCSPA based on an insurer's handling of a single claim, a plaintiff must demonstrate that the insurer (1) violated the Act in handling the claim and (2) committed violations of the Act "with such frequency as to indicate a general business practice." *Skiles v. Mercado*, No. 3:15-3865, 2016 WL 183921, at *8 (S.D. W. Va. Jan. 14, 2016) (citing *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 820 (W. Va. 2005)). Defendant contends that Plaintiffs have "failed to allege sufficient facts" to satisfy the requisite elements. [ECF No. 20, at 11]. It claims that Plaintiffs lack "any evidence to demonstrate a single violation of the UCSPA, much less multiple violations." *Id.* at 12. As such, it argues that Plaintiffs' claims in Count II "are simply a formulaic recitation of the cause of action" that "must be dismissed." *Id.* I disagree.

10

Plaintiffs have alleged sufficient facts, which the court accepts as true at this stage, to support their assertion that Defendant violated the UCSPA. They outline "at least [eleven] different acts or omissions that constitute proscribed unfair claims settlement practices" by Defendant. [ECF No. 21, at 7 (citing [ECF No. 14, ¶ 49]). For example, they allege that Defendant (1) failed to either affirm or deny coverage; (2) perpetrated pretextual and artificial positions, including unnecessary information requests to avoid taking a coverage position; (3) failed to follow up with the Insureds or their counsel to obtain information; and (4) misstated pertinent facts. [ECF No. 14, ¶ 49]. Each of the alleged violations is bolstered by corresponding facts as well as the relevant provision of the Act that Defendant is alleged to have violated. Taken as true, these facts support Plaintiffs' contentions that Defendant violated the UCSPA on at least one occasion. Taken together, these alleged acts or omissions constitute separate and discrete violations that can be used to establish a general business practice on Defendant's part. *See* Syl. Pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996). In short, Plaintiffs' factual allegations, taken as true, satisfies the *Twombly/Iqbal* standard to survive dismissal at this stage. Accordingly, Defendant's motion is **DENIED** on this ground.

### B. *Statute of Limitations*

Defendant next contends that the applicable statute of limitations bars Plaintiffs' UCSPA claim. [ECF No. 20, at 13]. Here, too, Defendant's argument fails. Dismissal based on the statute of limitations should only be granted "if it clearly appears on the face of the complaint that the plaintiff's claims are time-barred."

*Lydick v. Erie Ins. Prop. & Cas. Co.*, 358 F. Supp. 3d 552, 560 (S.D. W. Va. 2019) (internal citations omitted).

In determining whether a cause of action is time-barred, courts must undertake a five-step analysis. *Robinson v. Quicken Loans Inc.*, 988 F. Supp. 2d 615, 625 (S.D. W. Va. 2013). First, "the court should identify the applicable statute of limitations" for the cause of action. Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). Second, the court—or the jury if there is an issue of material fact—"should identify when the requisite elements of the cause of action occurred." *Id.* Third, the court should apply the discovery rule to determine when the limitations period began to run "by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Id.* at 265 (explaining that this is an objective test and that "[i]n most cases, the typical plaintiff will 'discover' the existence of the cause of action, and the statute of limitation will begin to run, at the same time that the actionable conduct occurs"). If a plaintiff "is not entitled to the benefit of the discovery rule," the court should "determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." *Id.* at Syl. Pt. 5. If the answer is yes, then the statute of limitations is tolled. Finally, the "the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine." *Id.* "Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact"—*i.e.*, the jury. *Id.*

Several courts, including the West Virginia Supreme Court of Appeals, have held that the fact-intensive nature of limitations issues is inappropriate for resolution at the Rule 12(b)(6) stage. *See Trivett v. Summers Cnty. Comm'n*, 895 S.E.2d 86, 101 (W. Va. 2023); *Sattler v. Bailey*, 400 S.E.2d 220, 230 n.14 (W. Va. 1990) (finding that "[t]here is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense" because of the likelihood that a plaintiff "can raise factual setoffs to such an affirmative defense") (internal citations omitted); *see also Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (stating that "because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred"); *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005) ("Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.")

Here, whether the UCSPA claim is time-barred is not clear on the face of the First Amended Complaint and will require resolution by the trier of fact. While the parties agree that a one-year statute of limitations applies to Plaintiffs' UCSPA claim, *see* [ECF No. 20, at 13]; [ECF No. 21, at 13], a disagreement exists as to when that limitations period began to toll. Plaintiffs initially filed notice of the third-party insurance claim in 2015, [ECF No. 14, ¶ 13], but Defendant provided no explicit notice that it would not be paying that claim until October of 2022, [ECF No. 14-12, at 1]. Defendant, therefore, argues that the cause of action arose in October of 2022 at the latest. *See* [ECF No. 20, at 14]. Plaintiffs, meanwhile, contend that Defendant has

13

been involved in an ongoing course of conduct in its handling of Plaintiffs' insurance claim that precludes a determination of the limitations period at this time and will require further factual inquiry. [ECF No. 21, at 15–16]. I agree with Plaintiffs and find that, due to the contested nature of the applicable limitations period, it would be inappropriate to decide whether Count II is time-barred at this stage of litigation. Accordingly, Defendant's motion is **DENIED** on this ground.

## IV.  Conclusion

For the foregoing reasons, Defendant's Partial Motion to Dismiss Count II of Plaintiffs' Amended Complaint, [ECF No. 19], is **DENIED**. Moreover, the Court independently was aware of and considered the supplemental authority at issue in Defendant's Motion to Strike Plaintiffs' Supplement to its response in opposition to this Motion to Dismiss. [ECF No. 26]. Accordingly, Defendant's Motion, [ECF No. 26], is also **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:  July 15, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE